IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| ROSEBUD LMC, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 17-1712 (GMS) |
| | ) | |
| SALESFORCE.COM, INC., | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | |

**DEFENDANT SALESFORCE.COM, INC.'S OPENING BRIEF
IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com

*Attorneys for Defendant*

OF COUNSEL:

Ryan M. Kent
Sonal N. Mehta
Laura Miller
DURIE TANGRI LLP
217 Leidesdorff Street
San Francisco, CA 94111
(415) 362-6666

January 19, 2018

# TABLE OF CONTENTS

I.      NATURE AND STAGE OF THE PROCEEDINGS ........................................................1

II.     SUMMARY OF ARGUMENT ..................................................................................1

III.    STATEMENT OF FACTS .......................................................................................2

IV.     ARGUMENT .........................................................................................................3

        A.      Legal Standard ...........................................................................................3

        B.      The Complaint Does Not and Cannot Allege Facts Sufficient to State a Claim of
                Infringement of the '280 and '879 Patents. ...................................................5

        C.      The Complaint Fails to State a Claim for Willful Infringement, and Rosebud's
                Request for Treble Damages Should Be Dismissed. ........................................9

V.      CONCLUSION....................................................................................................10

## **TABLE OF AUTHORITIES**

### **Cases**

*Addiction & Detoxification Inst. L.L.C. v. Carpenter*,
    620 F. App'x 934 (Fed. Cir. 2015) ...................................................................3

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..................................................................................3, 4

*Atlas IP, LLC v. Exelon Corp.*,
    189 F. Supp. 3d 768 (N.D. Ill. 2016) ...........................................................4, 5

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)............................................................................3, 4, 10

*Boadin Tech., LLC v. Bloomberg L.P.*,
    C.A. No. 11-802 (RGA) ...............................................................................9

*e.Digital Corp. v. iBaby Labs, Inc.*,
    No. 15-cv-05790-JST, 2016 WL 4427209 (N.D. Cal. Aug. 22, 2016).....................4

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
    136 S. Ct. 1923 (2016) .................................................................................9

*Mayne Pharma Int'l Pty. Ltd. v. Merck & Co.*,
    C.A. No. 15-438-LPS-CJB, 2015 WL 7833206 (D. Del. Dec. 3, 2015) ................10

*Modern Telecom Sys., LLC v. TCL Corp.*,
    C.A. No. 17-583-LPS-CJB, 2017 WL 6524526 (D. Del. Dec. 21, 2017) .................4

*North Star Innovations, Inc. v. Micron Tech., Inc.*,
    C.A. No. 17-506-LPS-CJB, 2017 WL 5501489 (D. Del. Nov. 16, 2017)................4

*Raindance Techs., Inc. v. 10x Genomics, Inc.*,
    C.A. No. 15-152-RGA, 2016 WL 927143 (D. Del. Mar. 4, 2016).......................4, 9

*USX Corp. v. Barnhart*,
    395 F.3d 161 (3d Cir. 2004)...........................................................................9

*Varian Medical Sys., Inc. v. Elekta AB*,
    C.A. No. 15-871-LPS, 2016 WL 3748772 (D. Del. July 12, 2016) ......................10

### **Rules and Statutes**

35 U.S.C. § 271(a) .......................................................................................1

## I.    NATURE AND STAGE OF THE PROCEEDINGS

On November 28, 2017, Plaintiff Rosebud LMS, Inc. ("Rosebud") filed this action, alleging that Defendant Salesforce.com, Inc. ("Salesforce") directly infringes U.S. Patent No. 8,578,280 (the "'280 patent") and U.S. Patent No. 9,614,879 (the "'879 patent") through its "Quip platform."  D.I. 1 ¶¶ 16, 18, 24.[1]  Salesforce moves to dismiss these claims because the complaint's cursory allegations fail to provide any factual basis to allege infringement of the asserted patents.

## II.   SUMMARY OF ARGUMENT

In its complaint, Rosebud alleges that Salesforce is liable for direct infringement, accusing Salesforce's Quip product.  D.I. 1 ¶ 16.  Yet the complaint provides only vague and cursory factual allegations that are inadequate to state a claim for patent infringement.  Rosebud fails to provide specific factual allegations connecting its claims of infringement to each element of the asserted claims, and in many cases simply omits entirely any allegations directed to certain claim limitations.  In particular:

- Although the claims identified in the Complaint each requires "transmit[ting] data comprising the native document file **and** the data regarding one or more application level events over the computer network . . . to a second instance of the stand-alone application," Rosebud makes no factual allegation that Quip transmits data that includes both the "native document file" and the "data regarding one or more application level events."

---

[1]    Rosebud restricts its claim to 35 U.S.C. § 271(a), thus disavowing any claim of indirect infringement.

- Although the claims identified in the Complaint each requires that "no events that have an effect outside the stand-alone application are propagated," Rosebud makes no factual allegation that Quip will not propagate events with an effect in third-party applications.

- Although the claims identified in the Complaint each requires "the second instance of the stand-alone application . . . to display a local copy of a document corresponding to a local copy of the native document file," Rosebud makes no factual allegation that Quip performs this action.

Salesforce accordingly requests that the Court dismiss Rosebud's Complaint.

## III.   STATEMENT OF FACTS

The '280 patent and the '879 patent, both entitled "Method and Software for Enabling N-Way Collaborative Work Over a Network of Computers," relate to a specific way of enabling collaboration over a network.  According to the patents, existing approaches to collaboration were flawed.  For example, the patents identify a first prior art approach as being a "universal document representation scheme" such as "HTML" along with a "web browser" as a "common application" to "manipulate documents."  D.I. 1-1 ('280 patent) at 1:41–49.[2]  The patents, however, assert that this "scheme has disadvantages: web browsers do not 'abstract away' from workstation-specific issues, such as screen size and resolution."  *Id.* at 1:49–51.  A second prior art approach—using "application sharing"—was also criticized primarily because it "can create a substantial security risk."  *Id.* at 1:55–56, 2:3–6.

---

[2]  The '879 patent is a continuation of the '280 patent and contains a materially-identical specification.  As a result, citations to the specification will be made to the '280 patent.

The solution according to the patents is found in a "plug-in module that is particularly suited to support synchronous collaborative work." *Id.* at 2:41–43. This plug-in intercepts events within an underlying application (*e.g.*, user changes to a native document) running on a first user's computer. It transmits these events along with the native document to a second instance of the plug-in running on a second user's computer and then replicates these events on the second user's computer. *See e.g.*, *id.* at Claim 1. In order to provide security, the plug-in "propagates no events that could have an effect outside the application," and "any other resources present on any participating workstation are ignored." *Id.* at 3:65–4:2.

## IV.   ARGUMENT

### A.   Legal Standard

Under *Twombly* and *Iqbal*, a plaintiff must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 550 (2007). Satisfying this obligation "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id.* at 555 n.3. The complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Indeed, to survive a motion to dismiss, a "complaint must plead enough factual matter that, when taken as true, states a claim to relief that is plausible on its face." *Addiction & Detoxification Inst. L.L.C. v. Carpenter*, 620 F. App'x 934, 936 (Fed. Cir. 2015) (citing *Twombly*, 550 U.S. at 556, 570) (internal quotation marks and alterations omitted)). "[T]he plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief" and must therefore be dismissed. *Id.* at 679 (internal quotation marks and alterations omitted). A complaint that

merely pleads facts that are "consistent with" a defendant's liability "stops short of the line between possibility and plausibility." *Twombly*, 550 U.S. at 557.

Although non-speculative factual allegations are to be accepted as true, the court is not required to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678; *id.* at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). Thus, a reviewing court may begin "by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. The court must then determine whether the factual allegations in the complaint "plausibly give rise to an entitlement to relief." *Id.* In the context of direct infringement allegations, a patent infringement complaint must allege more than that a particular product's operation is "consistent with" or renders "possib[le]" infringement; it must contain "some further factual enhancement" or an additional "factually suggestive" allegation that direct infringement is "plausible." *Twombly*, 550 U.S. at 556–57, 557 & n.5. With respect to that, for at least one claim, the complaint must include facts sufficient to show that the defendant plausibly infringes every element of the claim. *See, e.g.*, *Modern Telecom Sys., LLC v. TCL Corp.*, C.A. No. 17-583-LPS-CJB, 2017 WL 6524526, at *2 (D. Del. Dec. 21, 2017); *North Star Innovations, Inc. v. Micron Tech., Inc.*, C.A. No. 17-506-LPS-CJB, 2017 WL 5501489, at *1 (D. Del. Nov. 16, 2017); *Raindance Techs., Inc. v. 10x Genomics, Inc.*, C.A. No. 15-152-RGA, 2016 WL 927143, at *2 (D. Del. Mar. 4, 2016); *Atlas IP, LLC v. Exelon Corp.*, 189 F. Supp. 3d 768, 775 (N.D. Ill. 2016). That is because "if it is not plausible, after reading a complaint, that the accused infringer's product reads on a limitation in the one asserted claim from a patent-in-suit, then it is not plausible that the accused infringer actually infringes the patent claims (or the patent)." *Modern Telecom*, 2017 WL 6524526, at *2; *see also e.Digital Corp. v. iBaby Labs,*

*Inc.*, No. 15-cv-05790-JST, 2016 WL 4427209, at *3 (N.D. Cal. Aug. 22, 2016) ("Because

failure to practice even a single element is all that separates innovation from infringement, . . .

there is always an obvious alternative explanation where a plaintiff does not allege facts about

each element.") (quoting *Exelon*, 189 F. Supp. 3d at 775).  Rosebud's allegations as to each of

the patents fail.

**B.**      **The Complaint Does Not and Cannot Allege Facts Sufficient to State a Claim of Infringement of the '280 and '879 Patents.**

Claim 1 of the '280 patent and Claim 1 of the '879 patent are the only claims that the

Complaint purports to map onto Salesforce's Quip product.  These claims are substantially

similar and Rosebud identifies the exact same Quip functionality in support of its infringement

claims as to both patents.  *Compare* D.I. 1 ¶¶ 18, 24.  A comparison of the claims is provided

below:

| Claim 1 of the '280 patent | Claim 1 of the '879 patent |
|---|---|
| 1. A method for collaboration over a computer network, comprising: | 1. A method for collaboration over a computer network, comprising: |
| [a] intercepting data regarding one or more application level events that occur within a first instance of a stand-alone application operable to create and edit to documents in response to user actions, and wherein the one or more application level events reflect user actions that result in changes to a native document file generated by the first instance of stand-alone application; | [a] tracking one or more application level events that occur within a first instance of a stand-alone application operable to create and edit documents in response to user actions wherein the one or more application level events reflect user actions that result in changes to a native document file generated by the first instance of the stand-alone application; |
| [b] transmitting data comprising the native document file and the data regarding one or more application level events over the computer network, automatically and in real time, to a second instance of the stand-alone application; and | [b] transmitting data comprising the native document file and data regarding one or more application level events over the computer network, automatically and in real time, to a second instance of the stand-alone application; and |

| Claim 1 of the '280 patent | Claim 1 of the '879 patent |
|---|---|
| [c] causing the second instance of the stand-alone application: | [c] causing the second instance of the stand-alone application: |
| [d] to display a local copy of a document corresponding to a local copy of the native document file, | [d] to display a local copy of a document corresponding to a local copy of the native document file, |
| [e] to receive and use the data comprising data regarding one or more application level events to replicate the events that occurred within the first instance, | [e] to receive and use the data comprising data regarding one or more application level events to replicate the events that occurred within the first instance, |
| [f] to mirror the user actions performed in the first instance without user intervention by performing an equivalent action on the local copy of the native document file and thereby make corresponding changes to the local copy of the native document file, and | [f] to mirror the user actions performed in the first instance without user intervention by performing an equivalent action on the local copy of the native document file and thereby make corresponding changes to the local copy of the native document file, and |
| [g] to display the changes to the local copy of the document, | [g] to display the changes to the local copy of the document, |
| [h] wherein no events that have an effect outside the stand-alone application are propagated to provide security of the collaboration. | [h] wherein, in order to provide security for the collaboration, no events that have an effect outside the stand-alone application are propagated. |

'280 patent at 6:62–7:24; '879 patent at 7:10–40.  The Complaint fails to allege facts setting forth a plausible infringement claim with respect to numerous elements of Claim 1 of either patent.  Indeed, the Complaint provides only cursory factual allegations regarding Salesforce's purported infringement, all contained within two nearly-identical paragraphs of the Complaint.

**First**, Claim 1 of both the '280 and '879 patents require "transmitting data comprising the native document file **and** the data regarding one or more application level events over the computer network . . . to a second instance of the stand-alone application."  '280 patent at 7:4–8 (emphasis added); *see also* '879 patent at 7:19–23.  The **only** factual allegation in the Complaint regarding this limitation is that Quip allegedly infringes claim 1 of each patent by "replicating

and sharing the changes made on the one instance of a document or file with other individuals by transmitting *the changes* over a network and displaying the changes to other collaborators via their instance of the application." D.I. 1 ¶¶ 18, 24 (emphasis added). Rosebud does not attempt to allege that Quip transmits data comprising *both* the "native document file" and the "application level events reflect[ing] user actions that result in changes to a native document file generated by the first instance of a stand-alone application." To the contrary, the Complaint is completely silent as to the transmission of a native document file.

*Second*, the final element of Claim 1 of the '280 patent requires that "no events that have an effect outside the stand-alone application are propagated to provide security of the collaboration." '280 patent at 7:22–24. Similarly, Claim 1 of the '879 patent requires that "in order to provide security for the collaboration, no events that have an effect outside the stand-alone application are propagated." '879 patent at 7:38–40. This feature is touted in the patents as an important improvement over the prior art because it enhances the security of the participating workstations. *See, e.g.*, '280 patent at 2:3–6; '879 patent at 2:7–10.

Despite this limitation's import to the claimed invention, the Complaint is completely silent as to why Rosebud contends the Quip product meets it. The Complaint instead recites a set of unrelated Quip security functionality—namely, "providing security features such as a required HTTPS connection, data transmission and encryption over SSL connections, firewall protection of servers to guard against unauthorized access, and other measures to assure that only intended changes are made through the Quip system, such as, *inter alia*, allowing access to and operations on a given document to be limited to designated user(s)." D.I. 1 ¶¶ 18, 24. But none of these security features say anything about whether "no events that have an effect outside the stand-

alone application are propagated."  Indeed, while limiting access to "designated user(s)" can be a useful security measure, it is not the security measure explicitly required by the claim language.

The Complaint's failure is not an accident.  Quip actively promotes that it ***does*** propagate events that have an effect outside Quip through, for example, Live Apps.  The Complaint implicitly acknowledges this fact by stating that Quip can "creat[e] and edit[] documents or files using the Quip application or other 'Live Apps' (applications such as Google Drive, Salesforce Service Clout [sic], Altify, *etc.*, in which the Quip functionality has been embedded)."  D.I. 1 ¶¶ 18, 24.  By way of example, Quip will propagate changes made inside a Quip document to a third-party software development application called Jira.  When a member of a collaborating team makes changes to a Jira project within a Quip document, the effect of that change is the same as if the user had made the edit directly within the Jira application.  *See, e.g.*, https://marketplace.atlassian.com/plugins/quip.jira.liveapp/cloud/overview ("Live Apps bring all relevant content for any project into a centralized document, removing the need to toggle between multiple windows and apps to get work done.  With Live Apps, teams are empowered to add features including Jira Tickets and more to any Quip live document, with a single click."); https://www.youtube.com/watch?v=xDZnEVt_NXI (at 1:17 mark).

***Third***, Claim 1 of each patent requires "causing the second instance of the stand-alone application . . . to display a local copy of a document corresponding to a local copy of the native document file."  '280 patent at 7:9–11.  Yet the Quip software itself does not cause a copy of the edited file to be displayed on the second instance.  The Quip user may.  And Rosebud does not offer any factual allegation to the contrary.  It simply contends that Quip can "display[] the changes to other collaborators via their instance of the application," and can "allow[] the real time revision history, edit tracking, and conversation logs made on any single instance of the

document to be viewed on all other instances of the document." D.I. 1 ¶¶ 18, 24. Neither

allegation contends that Quip itself "caus[es] the second instance of the stand-alone application .

. . to display a local copy of a document corresponding to a local copy of the native document

file" as the claims require. As a result, the Complaint fails to state a claim for direct

infringement. *See Raindance*, 2016 WL 927143, at *2 (granting motion to dismiss where there

was "nothing in the complaint . . . that hints at the role of [a claim element] in Defendant's

[explicitly identified] products.").

    **C.**    **The Complaint Fails to State a Claim for Willful Infringement, and Rosebud's Request for Treble Damages Should Be Dismissed.**

    The Complaint contains no allegations that Salesforce willfully infringed either the '280

patent or the '879 patent. Nonetheless, in its prayer for relief, Rosebud asks this Court to

"[e]nhanc[e] the damages award to Rosebud up to three times." D.I. 1 at 10 (Prayer for Relief).

Plaintiff cannot seek relief for willful infringement without pleading a plausible claim for such

relief. *See USX Corp. v. Barnhart*, 395 F.3d 161, 166 (3d Cir. 2004) ("[T]he court cannot

provide a remedy, even if one is demanded, when plaintiff has failed to set out a claim for

relief." (internal quotation marks omitted)); *Boadin Tech., LLC v. Bloomberg L.P.*, C.A. No. 11-

802 (RGA), Hr'g Tr. 23:24–24:3, D.I. 31 (D. Del. Jan. 17, 2012) ("So when the claim for relief

doesn't show any basis for the demand for relief, the part of the demand for the relief that is not

connected to any claim for relief should be, in my opinion, dismissed for failure to state a claim

upon which relief can be granted.") (Ex. A).

    In addition to a predicate showing of infringement, a finding of willful infringement

requires "egregious cases of misconduct beyond typical infringement." *Halo Elecs., Inc. v. Pulse

Elecs., Inc.*, 136 S. Ct. 1923, 1935 (2016). The only possible allegation in the Complaint

relevant to a willful infringement claim is the conclusory statement that "[o]n information and

belief, Salesforce has had knowledge and notice of the ['280 patent and '879 patent], as well as of its own infringement . . . since well before the filing of this Complaint, but has taken no action to avoid infringement." D.I. 1 ¶¶ 21, 27. This threadbare allegation that Salesforce had pre-suit knowledge of the asserted patents is inadequate to state a claim for willful infringement. *See, e.g.*, *Varian Medical Sys., Inc. v. Elekta AB*, C.A. No. 15-871-LPS, 2016 WL 3748772, at *8 (D. Del. July 12, 2016) (dismissing willful infringement claim where "the Complaint [did] not sufficiently articulate how the U.S. Defendants' making, using or offering for sale of the Gamma Knife Icon actually amounted to an egregious case of infringement of the patent"); *Mayne Pharma Int'l Pty. Ltd. v. Merck & Co.*, C.A. No. 15-438-LPS-CJB, 2015 WL 7833206, at *5 (D. Del. Dec. 3, 2015) (holding plaintiff's single sentence claim of willful infringement insufficient under *Twombly*).

As there is no basis for such relief within the Complaint, Salesforce requests that the Court dismiss the request for treble damages from the Complaint.

## V.   <u>CONCLUSION</u>

For the foregoing reasons, Salesforce requests that the Court dismiss Rosebud's Complaint.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld*

_____
Jack B. Blumenfeld (#1014)
Stephen J. Kraftschik (#5623)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
skraftschik@mnat.com

*Attorneys for Defendant*

OF COUNSEL:

Ryan M. Kent
Sonal N. Mehta
Laura Miller
DURIE TANGRI LLP
217 Leidesdorff Street
San Francisco, CA 94111
(415) 362-6666

January 19, 2018

## CERTIFICATE OF SERVICE

I hereby certify that on January 19, 2018, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on January 19, 2018, upon the following in the manner indicated:

Stamatios Stamoulis, Esquire                    *VIA ELECTRONIC MAIL*
Richard C. Weinblatt, Esquire
STAMOULIS & WEINBLATT LLC
Two Fox Point Centre
6 Denny Road, Suite 307
Wilmington, DE  19809
*Attorneys for Plaintiff*

Cecil E. Key, Esquire                           *VIA ELECTRONIC MAIL*
DIMUROGINSBERG, P.C.
1101 King Street, Suite 610
Alexandria, VA  22314
*Attorneys for Plaintiff*

*/s/ Jack B. Blumenfeld*
_____
Jack B. Blumenfeld (#1014)