**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ROSEBUD LMS, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) CA No. 1:17-cv-01712-GMS |
| v. | ) |
| | ) **JURY TRIAL DEMANDED** |
| SALESFORCE.COM, INC. | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO TRANSFER VENUE TO
THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
CALIFORNIA**

Cecil E. Key
DIMUROGINSBERG, P.C.
1101 King St., Suite 610
Alexandria, Virginia 22314
Phone: (703) 684-4333
Fax:    (703) 548-3181
Email: ckey@dimuro.com

Richard C. Weinblatt #5080
STAMOULIS & WEINBLATT LLC
Two Fox Point Centre
6 Denny Road, Suite 307
Wilmington, Delaware 19809
Phone: (302) 999-1540
Email: weinblatt@swelaw.com
*Attorneys for Plaintiff*
*ROSEBUD LMS, INC.*

i

## TABLE OF CONTENTS

NATURE AND STATE OF THE PROCEEDINGS ...................................................... 1

SUMMARY OF ARGUMENTS .................................................................................. 2

STATEMENT OF FACTS ........................................................................................... 3

ARGUMENT ............................................................................................................... 4

  I.   FACTORS TO CONSIDER IN A MOTION TO TRANSFER ............................................ 4

  II.  THE PRIVATE INTEREST FACTORS GREATLY FAVOR DENYING TRANSFER .. 6

    A.   PRESUMPTION FAVORING PLAINTIFF'S CHOICE OF FORUM .......................... 6

    B.   DEFENDANT'S CHOICE OF FORUM CARRIES LITTLE WEIGHT ....................... 8

    C.   SALESFORCE'S INFRINGEMENT ACTIONS ARE NATIONAL IN NATURE ....... 8

    D.   CONVENIENCE OF THE PARTIES WEIGHS HEAVILY IN FAVOR OF REMAINING IN DELAWARE ............................................................................. 8

    E.   TRANSFER TO NORTHERN CALIFORNIA MAY MAKE IT IMPOSSIBLE FOR KEY PLAINTIFF WITNESSES TO BE AVAILABLE FOR TRIAL ................................ 12

    F.   DEFENDANT'S BOOKS AND RECORDS CAN EASILY BE PRODUCED IN DELAWARE ............................................................................................................. 15

  III.  THE PUBLIC INTEREST FACTORS FAVOR DENYING TRANSFER .................... 16

    A.   JUDGEMENT WILL BE ENFORCEABLE REGARDLESS OF FORUM ................ 16

    B.   PRACTICAL CONCERNS ENCOURAGE REMAINING IN DELAWARE ............ 16

    C.   COURT CONGESTION ............................................................................................ 16

    D.   DELAWARE COURTS HAVE A LOCAL INTEREST IN ENSURING THAT COMPANIES INCORPARATED IN THE STATE ARE SUBJECT TO DELAWARE JURISDICITION ....................................................................................................... 17

    E.   THE PUBLIC POLICY OF DELAWARE ENCOURAGES THE USE OF DELAWARE LAW BY DELAWARE CORPORATIONS ................................................. 18

    F.   FAMILIARITY OF THE TRIAL JUDGE WITH APPLICABLE LAW ...................... 18

CONCLUSION .......................................................................................................... 19

## TABLE OF AUTHORITIES

**Cases**

*ADE Corp. v. KLA-Tencor Corp.,* 138 F.Supp.2d 565, (D. Del. 2001)........................................ 13

*Affymetrix, Inc. v. Synteni, Inc.,* 28 F.Supp.2d 192 (D. Del. 1998) ............................... 11

*AIP Acquisitions LLC v. iBasis, Inc.*, No. 12-616 GMS, 2012 WL 5199118 (D. Del. Oct. 19, 2012)........................................................................................................................... 9, 15

*Audatex N. Am., Inc. v. Mitchell Int'l, Inc.,* No. 12-cv-139-GMS, 2013 WL 3293611 (D. Del. June 28, 2013) ......................................................................................................... 15

*Autodesk Can. v. Assimilate, Inc.*, No. 08-587-SLR-LPS, 2009 WL 3151026, (D. Del. Sep. 29, 2009).................................................................................................................................. 17

*Blackbird Tech LLC v. Cloudflare, Inc.*, Nos. 17-283, 17-284, 2017 WL 4543783 (D. Del. Oct. 11, 2017)............................................................................................................................ 8

*Blackbird Tech LLC v. TuffStuff Fitness Int'l, Inc.*, No. 16-733-GMS, 2017 WL 1536394 (D. Del. April 27, 2017). ........................................................................................................... 7

*Cellectis S.A. v. Precision Biosciences, Inc.*, 858 F.Supp.2d 376 (D. Del. 2012) ........................ 8

*Ikos Sys., Inc. v. Cadence Design Sys., Inc.*, No. 02-1335-GMS, 2002 WL 31414136 (D. Del. Oct. 21, 2002)................................................................................................................... 10

*In re Genentech, Inc.,* 566 F.3d 1338 (Fed. Cir. 2009)................................................... 15

*Intellectual Ventures I LLC v. Altera Corp.*, 842 F.Supp.2d 744 (D. Del. 2012).............. 9, 13, 17

*Jumara v. State Farm Ins. Co.*, 55 F.3d 873 (3d Cir. 1995) ............................... 5, 6, 8, 12, 13, 15

*Linex Techs. v. Hewlett-Packard Co.*, No. 11-400-GMS, 2013 WL 105323 (D. Del. Jan. 7, 2013) ............................................................................................................................ 6, 7, 9

*Micron Tech., Inc. v. Rambus, Inc.*, 645 F.3d 1311 (Fed. Cir. 2011) ....................................... 9, 11

*Miracle Stretch Underwear Corp. v. Alba Hosiery Mills*, 136 F.Supp. 508 (D. Del. 1955) .......... 3

*Nottenkamper v. Modany*, No. 14-672-GMS, 2015 WL 1951571 (D. Del. Apr. 29, 2015)........... 7

*Scientific Telecomm. LLC v. Adtran, Inc.*, 15-647-SLR, 2016 WL 1650760 (D. Del. April 25, 2016)........................................................................................................................... 9, 14, 18

*Shutte v. Armco Steel Corp.*, 431 F.2d 22 (3d Cir. 1970) ........................................................... 6

*Smart Audio Techs., LLC v. Apple, Inc.*, 910 F.Supp.2d 718 (D. Del. 2012).............. 9, 10, 11, 12

*TC Heartland LLC v. Kraft Foods Grps. Brands LLC*, 137 S.Ct. 1514 (2017)...................... 5, 16

*Tessera, Inc. v. Sony, Elecs., Inc.*, No. 10-838-RMB-KW, 2012 WL 1107706 (D. Del. Mar. 30, 2012).................................................................................................. 12, 13

*Verint Sys. Inc. v. CallCopy, Inc.*, No. 13-562-GMS, 2013 WL 5338008 (D. Del. Sep. 23, 2013) ................................................................................................................ 8, 9

*VirtualAgility Inc. v. Salesforce.com, Inc.,* No. 2:13-cv-00011-JRG, 2014 WL 459719, (E.D. Tex. Jan. 31, 2014) ..........................................................................................14

*Wacoh Co. v. Kionix Inc.,* 845 F.Supp.2d 597 (D. Del. Jan. 9, 2012) ......................................... 17

**Rules and Statutes**

Fed. R. Civ. P. 45 .........................................................................................................13

28 U.S.C. § 1391 ............................................................................................................ 4

28 U.S.C. § 1400 ................................................................................................... 4, 5, 16

28 U.S.C. § 1404 ................................................................................................... 1, 5, 8

## NATURE AND STATE OF THE PROCEEDINGS

Plaintiff, Rosebud LMS, Inc. ("Rosebud"), commenced this action against Defendant, Salesforce.com, Inc. ("Salesforce"), for direct and willful infringement of its duly and lawfully issued patents, U.S. Patent 8,578,280 and U.S. Patent 9,614,879 (collectively the "patents") by developing, using, and/or selling the Quip online collaboration platform.  On November 28, 2017, Salesforce filed a Motion to Dismiss Rosebud's complaint based on the assertion that Rosebud failed "to provide any factual basis to allege infringement of the asserted patents." (D.I. 9 at 1.)  In response, Rosebud filed both a Response to Defendant's Motion to Dismiss, in which Rosebud addressed the deficiencies of Salesforce's first Motion to Dismiss, and a First Amended Complaint.  (D.I. 12-13). In the Amended Complaint, Rosebud alleged additional facts in support of its claim of Salesforce's direct and willful infringement; added claims of direct infringement under the theory of divided infringement; and added claims of Salesforce's induced infringement of the patents. Salesforce moved to dismiss Rosebud's claims in a renewed Motion to Dismiss First Amended Complaint, and Rosebud filed a response to Salesforce's deficient Motion to Dismiss. (D.I.14-16.)

While the second Motion to Dismiss awaits this Court's consideration, Salesforce has filed a Motion to Transfer Venue to the United States District Court for the Northern District of California ("Transfer Motion") under 28 U.S.C. § 1404(a).  In the Transfer Motion, Salesforce seeks to shift the burden of travelling for trial to Rosebud, a much smaller company in a financially less advantageous position to handle this burden.  Mere burden-shifting is an insufficient basis to overcome the strong presumption of Delaware as the appropriate venue under the circumstances of this case, and Rosebud therefore opposes the Transfer Motion and requests that it be denied.

1

## SUMMARY OF ARGUMENTS

1.  As a Delaware corporation, Salesforce faces a high burden to show that litigating in Delaware would be inconvenient.  Furthermore, Rosebud's preference for Delaware as its choice of forum carries a heightened weight in the consideration to transfer.  To overcome these presumptions and warrant transfer, Salesforce must show that litigating in the Northern District of California is substantially more convenient for the parties in the aggregate than litigating in the District of Delaware, not simply more convenient for Salesforce. Salesforce has failed to do this in its Transfer Motion.

2.  Location of Salesforce's employees and documents are traditionally weak factors in the transfer analysis. In addition, Salesforce does not present any statement from the non-party witnesses it claims would not be willing to appear in this District; it relies solely on the speculation of a sole Salesforce employee who has made no effort to contact said witnesses. (D.I. 20 at ¶ 18.)  Simply noting that non-party witnesses are outside of a district's power to subpoena for trial does not establish that those witnesses are unavailable for trial. Thus, Salesforce has failed to distinguish this case from any other patent infringement or other case of national scope that requires testimony from witnesses that reside outside the scope of the Court's subpoena power.

3.  Salesforce failed to properly weigh the substantial inconvenience that travelling to the Northern District of California would impose on Rosebud. (D.I. 19 at 6.)  Salesforce is a massive international corporation with considerable resources; travel imposes a negligible financial burden on the company. Comparatively, Rosebud is a much smaller company that is in a less favorable position to bear the financial burden of travelling across the country. Salesforce also has several large global offices much closer to Delaware on the east coast.

4.  A transfer to the Northern District of California would make it difficult if not impossible for Rosebud's key witnesses to appear for trial. All three named inventors on the patents live considerably closer to Delaware than to Northern California. Transferring to that district would double or triple the distance and time each of them would need to travel to appear for trial. Of the three inventors, only John Mohan is an employee of Rosebud and so can be encouraged by Rosebud to appear for trial. Mohan is the CEO and founder of Rosebud; however, he is eighty years old and wrestles with health issues. Declaration of John J. Mohan ("Mohan Decl."), ¶ 6. This makes travel particularly arduous for him.[1]  Salesforce only considers its own convenience in transferring to the Northern District of California in its Transfer Motion. A motion to transfer is not in the "interest of justice" when it only serves the convenience of the defendant. *Miracle Stretch Underwear Corp. v. Alba Hosiery Mills*, 136 F. Supp. 508, 511 (D. Del. 1955). The slight increase in convenience for Salesforce to litigate in California does not overcome the strong presumptions created by its incorporation in Delaware and Rosebud's choice of forum, and it certainly does not overcome the monumental burden that the transfer would place onto Rosebud. For these reasons and those described below, Salesforce's Transfer Motion must be denied.

## STATEMENT OF FACTS

Rosebud and Salesforce are both corporations incorporated under the laws of the State of Delaware.  Rosebud maintains its principle place of business in New York, New York. Salesforce maintains its principal place in San Francisco, California, along with over fifty global

---

[1] In its Transfer Motion, Salesforce cites to "Kent Decl." and exhibits thereto as purported evidence of the location of Rosebud's witnesses.  *See* Doc. 19 at 2.  No Kent Declaration was filed or served with the Transfer Motion.  Salesforce has therefore failed to present any evidence that the Court can consider for this factor.

offices around the world including sixteen offices across the United States.  Declaration of Arlen Papazian ("Papazian Decl.") ¶ 2.  Several of these offices are a relatively short distance from Delaware:  two offices in New York, New York; one office in Herndon, Virginia; and one office in Boston, Massachusetts. *Id.*

The three named inventors on the patents are John Mohan, Moises Lejter, and Stephen Greene. John Mohan is the founder and CEO of Rosebud and currently resides in Fort Lauderdale, Florida.  Moises Letjer currently resides in Madison, Wisconsin. Stephen Greene currently resides in St. Johns, Newfoundland and Labrador, Canada.  Lejter and Greene are not employed by Rosebud.  The distance from Fort Lauderdale to Wilmington, Delaware, is about 1,100 miles and the distance to San Francisco is about 3,000 miles.  Papazian Decl. ¶ 3.  The distance from Madison to Wilmington is approximately 900 miles and the distance to San Francisco is about 2,000 miles. *Id.*  The distance from St. John's to Wilmington is approximately 1,800 miles and the distance to San Francisco is about 4,500 miles. *Id.*  The burden of travel nearly triples for Mohan if the case is transferred to the Northern District of California, and it more than doubles for both Letjer and Greene.

Each of the four non-party witnesses Salesforce identifies is a high-level employee at his or her respective company.  (D.I. 20 at ¶ 18.)   All four companies, Atlassian, Facebook, Google, and Docusign, are companies incorporated under the laws of the State of Delaware.  Papazian Decl. ¶ 5.

## **ARGUMENT**

### I.  **FACTORS TO CONSIDER IN A MOTION TO TRANSFER**

Under 28 U.S.C. § 1391, selection of venue for a civil action in general is proper in the district where the defendant resides.  Under 28 U.S.C. § 1400(b), venue in a civil action for

patent infringement is proper in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business.  For the purposes of § 1400(b), a domestic corporation "resides" in its state of incorporation. *See TC Heartland LLC v. Kraft Foods Grps. Brands LLC*, 137 S.Ct. 1514 (2017).  Salesforce is incorporated in the State of Delaware and therefore resides in Delaware for the purposes of the patent venue and general venue statutes.  This case was therefore properly brought in the judicial district where Salesforce resides.

According to 28 U.S.C. § 1404(a), the court may, for the convenience of parties and witnesses, and in the interest of justice, transfer a case to any other district or division where it might have been brought.  Salesforce has brought its Transfer Motion under a theory that the suit might have been brought in the Northern District of California.  Rosebud does not dispute that, for the purposes of § 1400(b), this suit could have also been originally brought in the Northern District of California.  Rosebud agrees that Salesforce has committed acts of infringement and has a regular and established place of business in that judicial district.  However, the requested transfer does not serve the interest of justice and places a greater overall inconvenience on the parties and witnesses.

In weighing a motion for transfer of venue, the Third Circuit has identified a list of private and public interest factors to be considered.  *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879-80 (3d Cir. 1995).  The private interest factors are: (1) the plaintiff's forum preference; (2) the defendant's forum preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses; and (6) the location of books and records. *Id.* at 879.  The public interest factors are: (1) the enforceability of the judgment; (2) practical considerations that could make the trial

easy, expeditious, or inexpensive; (3) relative court congestion of the two fora; (4) local interests in deciding local controversies at home; (5) public policies of the fora; and (6) the familiarity of the trial judge with any applicable state law in diversity actions. *Id.* at 879-80.

For the reasons that will be discussed below, Salesforce's analysis of the *Jumara* factors is gravely flawed. Salesforce only considers the convenience to itself that a transfer to the Northern District of California would bring. In deciding if transfer should be granted, the district court will balance the factors in respect to the overall convenience of both parties. For the reasons below, the *Jumara* factors when properly balanced mandate denying transfer and allowing this case to remain in the District of Delaware.

## II. THE PRIVATE INTEREST FACTORS GREATLY FAVOR DENYING TRANSFER

### A. PRESUMPTION FAVORING PLAINTIFF'S CHOICE OF FORUM

Generally, the plaintiff's choice of forum is the paramount consideration in any determination of a transfer request. *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970). Plaintiff's choice of venue should not be lightly disturbed. *Id.* Salesforce contends that since Rosebud's principal place of business is in New York, its choice to bring suit in Delaware is "not entitled to any special weight." (D.I. 19 at 6.) Salesforce further argues that Rosebud's incorporation in Delaware is insufficient to influence the transfer analysis. (*Id.*) In reaching these faulty conclusions, Salesforce either intentionally or carelessly misinterprets the case law it cites.

This Court held in *Linex Techs. v. Hewlett-Packard Co.* that when a plaintiff chooses to bring an action in a district where it is not physically located, its forum preference still deserves "heightened" consideration. *Linex Techs. v. Hewlett-Packard Co.*, No. 11-400-GMS, 2013 WL 105323, at *3 (D. Del. Jan. 7, 2013). Salesforce misrepresents that *Linex* held that a "choice of

forum [is] *not entitled to any special weight* when [a] plaintiff 'chooses to bring an action in a district where it is not physically located.'"  (D.I. 19 at 6 (emphasis added)).  That position is flatly contradicted by the express language of the *Linex* decision itself:  "[T]he court finds that this factor weighing against transfer merits heightened but not maximum weight." *Linex,* 2013 WL 105323, at *3.

Salesforce, citing to *Nottenkamper v. Modany*, states that Rosebud's incorporation in Delaware is insufficient to significantly influence the transfer analysis. (D.I. 19 at 6.)  This is once again a misleading interpretation of the case law.  In *Nottenkamper*, this Court held that a shareholder of a corporation incorporated in Delaware who brought suit in Delaware was entitled little weight in her choice of forum specifically "in a shareholder's derivative suit" because the shareholder is merely acting as a "phantom plaintiff with interest enough to enable [her] to institute the action and little more."  *Nottenkamper v. Modany*, No. 14-672-GMS, 2015 WL 1951571, at *3 (D. Del. Apr. 29, 2015) (internal citations omitted).  The present case is not a shareholder's derivative suit.  Accordingly, Rosebud's choice still carries a substantial heightened weight.

Further this Court accords deference to a plaintiff's decision to file an action in Delaware when the plaintiff is itself incorporated in Delaware. *Blackbird Tech LLC v. TuffStuff Fitness Int'l, Inc.*, No. 16-733-GMS, 2017 WL 1536394, at *3 (D. Del. Apr. 27, 2017). This deference is not diminished when, as here, the plaintiff incorporated in Delaware long before suit for reasons other than merely establishing venue. Mohan Decl. ¶ 2 (Rosebud first incorporated in Delaware in October 2001).  Rosebud's choice of forum is a substantial, heightened factor in favor of denying transfer.

## B. DEFENDANT'S CHOICE OF FORUM CARRIES LITTLE WEIGHT

Defendant's choice of forum, while still a factor to be measured, is entitled considerably less weight than the plaintiff's preference. *Blackbird Tech LLC v. Cloudflare, Inc.*, Nos. 17-283, 17-284, 2017 WL 4543783, at *6 (D. Del. Oct. 11, 2017). Accordingly, Salesforce preference to litigate nearer to its principal headquarters should be given very little weight.

## C. SALESFORCE'S INFRINGEMENT ACTIONS ARE NATIONAL IN NATURE

A claim of patent infringement arises wherever one has committed the acts of infringement. *Cellectis S.A. v. Precision Biosciences, Inc.*, 858 F. Supp. 2d 376, 381 (D. Del. 2012). Generally, where the defendant in such an infringement action operates on a national scale, the infringement is viewed as being committed in all districts. *Verint Sys. Inc. v. CallCopy, Inc.*, No. 13-562-GMS, 2013 WL 5338008, at *3 (D. Del. Sept. 23, 2013). This Court has acknowledged that, to a degree, an infringement claim can have "deeper roots" in the forum where the infringer developed the accused product. *Id.* Even with this acknowledgement, however, where such a defendant seeks to transfer to the forum in which the product was developed, the Court will only weigh this factor slightly in favor of the transfer. *Id.*

Salesforce certainly operates on a national level and beyond. The infringing Quip product operates as an online platform, further cementing the national scale of Salesforce's infringement. Salesforce's infringement occurs in all districts in the United States, including Delaware. Insofar as Quip was developed in San Francisco, this is a very weak consideration for transferring to the Northern District of California.

## D. CONVENIENCE OF THE PARTIES WEIGHS HEAVILY IN FAVOR OF REMAINING IN DELAWARE

As noted by the very language of § 1404(a), balancing the inconveniences to each party is the crucial determination made when examining the *Jumara* factors. When weighing this factor,

the court looks to several elements: (1) the parties' physical locations; (2) the associated logistical and operational costs to the parties' employees in traveling to the original forum as opposed to the proposed transferee district; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal. *Smart Audio Techs., LLC v. Apple, Inc.*, 910 F. Supp. 2d 718, 731 (D. Del. 2012).

This Court has repeatedly held that where the defendant has chosen to incorporate in Delaware, it will presume that the inconvenience of having to litigate in Delaware is low. *See, e.g.*, *Verint*, 2013 WL 5338008 at *3; *Linex,* 2013 WL 105323 at *5; *Scientific Telecomm. LLC v. Adtran, Inc.*, No. 15-647-SLR, 2016 WL 1650760, at *1 (D. Del. Apr. 25, 2016) ("[D]efendant clearly operates on a global basis, and its incorporation in Delaware reflects its recognition that Delaware is an appropriate jurisdiction for the resolution of commercial disputes through litigation."). "[A] Delaware corporation must expect an uphill climb in proving that it is, in any meaningful sense, 'inconvenient' to defend its actions in the forum in which the corporation has freely chosen to create itself." *Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 756 (D. Del. 2012).

Salesforce has freely chosen to incorporate in Delaware, so Delaware presumptively is not an inconvenient venue in which to litigate. By incorporating in Delaware, both Salesforce and Rosebud have willingly submitted themselves to suit here, which weighs in favor of keeping the suit in Delaware. *See Micron Tech., Inc. v. Rambus, Inc.*, 645 F.3d 1311, 1332 (Fed. Cir. 2011); *AIP Acquisitions LLC v. iBasis, Inc.*, No. 12-616 GMS, 2012 WL 5199118, at *4 (D. Del. Oct. 19, 2012). To warrant transfer, Salesforce must show that the balance of conveniences leans so overwhelmingly in its favor as to overcome the presumption created by its incorporation in Delaware. *Intellectual Ventures I,* 842 F. Supp. 2d at 756 ("Absent some showing of unique or

unexpected burden, a company should not be successful in arguing that litigation in its state of incorporation is inconvenient"). Salesforce has not only failed to meet this threshold, but as will be shown below, the factors when properly balanced weigh heavily in favor of the case remaining in Delaware.

The Court considers each party's physical location relative to the two potential fora. *Smart Audio*, 910 F. Supp. 2d at 731. Salesforce makes the faulty assumption that, since Rosebud is based in New York and must travel regardless of the forum, Rosebud can claim no convenience in the District of Delaware over the Northern District of California. (D.I. 19 at 7.) Salesforce completely ignores that the physical distance between New York and Delaware is negligible compared to the distance between New York and Northern California. Furthermore, a large international organization that maintains geographically diverse operating locations, such as Salesforce, is not considered to have a significant increase or decrease in travel time or convenience between fora. *Ikos Sys., Inc. v. Cadence Design Sys., Inc.*, No. 02-1335-GMS, 2002 WL 31414136, at *1 (D. Del. Oct. 21, 2002). As discussed above, Salesforce has sixteen operating locations across the United States, several of which are on the east coast within short travelling distance to Delaware. Papazian Decl. ¶ 2. These include two offices in New York City, an office in Northern Virginia, and an office in Boston. *Id.* Salesforce's Transfer Motion thus simply attempts to shift the entire burden of cross-country travel onto Rosebud.

The Court will next analyze the logistical and operational costs for each of the party's employees in traveling to the two potential fora. *Smart Audio*, 910 F. Supp. 2d at 731. Salesforce argues that since the employees who work on the infringing Quip product are based in San Francisco, the convenience advantage rests in allowing them to litigate nearer to their own headquarters. However, this Court has held, and the U.S. Court of Appeals for the Federal

Circuit has affirmed, that the conveniences of the employees of a corporation do not weigh strongly in favor of either fora because those employees can be encouraged to testify in either location. *Micron*, 645 F.3d at 1332. Transfer to the Northern District of California could, however, logistically bar Rosebud's CEO from appearing at trial. Mohan Decl. ¶ 6. John Mohan is Rosebud's founder, CEO, and first named inventor on both of the patents. *Id.* at ¶ 1. He currently lives in Fort Lauderdale, Florida. *Id.* at ¶ 4. Due to his age, Mohan finds travelling long distances very difficult. *Id.* at ¶ 6. He already faces the challenge of having to travel to Delaware for trial, but granting Salesforce's Motion will effectively triple the length he must trek. This makes it extremely difficult for Mohan to appear in California. *Id.* In addition to his personal difficulty, Mohan is the employee primarily responsible for overseeing the maintenance of the Rosebud's website from which it makes available its patented system. *Id.* ¶ 3. A longer absence for trial will more severely impact Mohan's ability to operate the company and could have adverse effects for Rosebud. *Id.* The logistical difficulty Mohan faces in travelling, compounded by the risk that Rosebud is unable to produce a primary witness in California, far outweighs any inconvenience Salesforce's employees would encounter in travelling to Delaware.

Finally, the Court will consider each party's relative ability to bear the costs of travel in light of its size and financial wherewithal. *Smart Audio*, 910 F. Supp. 2d at 731. Salesforce's size and financial resources indisputably far outstrip those of Rosebud. Salesforce is a titanic international corporation whereas Rosebud has a single office and few employees. Even accepting *arguendo* that Salesforce's total cost of travel to Delaware would amount to a greater number than Rosebud's costs of travel to California, Salesforce's vast financial resources place it in a far better position to absorb those costs. *See Affymetrix, Inc. v. Synteni, Inc.,* 28 F. Supp. 2d 192, 202 (D. Del. 1998) (finding that a multi-million dollar corporation defendant had no trouble

11

shouldering the financial burden of travelling to plaintiff's choice of forum); *Tessera, Inc. v. Sony, Elecs., Inc.*, No. 10-838-RMB-KW, 2012 WL 1107706, at *4 (D. Del. Mar. 30, 2012) (finding that an international corporation with billions in revenue could not establish "that litigating in Delaware would impose more than a minimal burden on them"); *Smart Audio*, 910 F. Supp. 2d at 731 (holding that any inconvenience imposed on a large company—in this case Apple—must be examined in light of that company's vast financial resources). The cost of cross-country travel would be insignificant to Salesforce, where it would prove considerably more burdensome to Rosebud.

Because Salesforce has freely chosen to incorporate in Delaware, litigation in Delaware is presumptively not inconvenient for it. Further considering that each of the factors enumerated by controlling case law weigh heavily in Rosebud's favor, the balance of conveniences overwhelmingly leans in support of remaining in Delaware.

### E.   TRANSFER TO NORTHERN CALIFORNIA MAY MAKE IT IMPOSSIBLE FOR KEY PLAINTIFF WITNESSES TO BE AVAILABLE FOR TRIAL

The Court only examines the conveniences of the witnesses insofar as any of the witnesses may actually be unavailable for trial in one of the fora. *Jumara,* 55 F.3d at 879. As discussed above, granting transfer to the Northern District of California will make it logistically difficult, if not impossible, for Rosebud's CEO, and the lead inventor on the patents, to be available for trial. In addition, a transfer would also make it far more difficult for the other two named inventors on the patents to travel for trial. Moises Letjer and Stephen Greene are not employees of Rosebud and therefore cannot be encouraged to appear and testify by Rosebud. Mohan Decl. ¶ 8. Letjer resides in Madison, Wisconsin, and Greene resides in St. John's, Newfoundland and Labarador, Canada. *Id.* ¶ 9. Neither Letjer nor Greene can be subpoenaed to attend trial in either the District of Delaware or the Northern District of California. Therefore,

their attendance is completely voluntary in either location.  For both of these inventors, the length of their travels more than double if transfer were granted.  Letjer and Greene are far more likely to agree to appear in Delaware to testify than in California.  In fact, transfer to Salesforce's preferred forum could make all three inventors named on the patents unavailable for trial.  This would prejudice Rosebud at trial, as the testimony of the named inventors is important evidence to help the jury understand the inventions and their development.

Salesforce argues that its non-party witnesses for rebutting Rosebud's divided infringement claims are located in the Northern District of California.  In establishing the inconvenience to its witnesses, it is the defendant's burden to show both the unavailability of a particular witness and that witness's importance to the case.  *Tessera*, 2012 WL 1107706, at 6.  Salesforce has fallen far short of this burden.  It identifies four potential witnesses it desires to call from Atlassian, Facebook, Google, and Docusign, all of which are Delaware corporations with their principal place of business in Northern California.  Papazian Decl. ¶ 4.  Salesforce cursorily mentions that these witnesses are outside of the subpoena power of the District of Delaware.  (D.I 19 at 9-10.)  However, this Court has repeatedly held that a non-party's residency outside of the subpoena power alone does not establish unavailability for the purposes of assessing a transfer request under the *Jumara* factors.  *Intellectual Ventures I*, 824 F. Supp. 2d at 758 (there was no evidence suggesting that a non-party witness outside of the jurisdiction would refuse to appear at trial; and even if the witness was unavailable for trial, defendant had not identified why testimony could not simply be taken by deposition); *Tessera*, 2012 WL 1107706, at *6; *ADE Corp. v. KLA-Tencor Corp.,* 138 F. Supp. 2d 565, 570-71 (D. Del. 2001) (the fact that a non-party witness lives outside of the subpoena power of the court does not create a presumption of unavailability). Under Fed. R. Civ. P. 45, non-party witnesses can be

subpoenaed for deposition regardless of venue, so the proper inquiry is not whether the witnesses are within the subpoena power of this District, but rather "how much, if at all, Defendant[] might be inconvenienced by having to rely on depositions as opposed to live attendance at trial." *VirtualAgility Inc. v. Salesforce.com, Inc.,* No. 2:13-cv-00011-JRG, 2014 WL 459719, at *5 (E.D. Tex. Jan. 31, 2014).

First, Salesforce has made no effort to establish that any of its indicated non-party witnesses would be *actually* unavailable for trial in Delaware. The only evidence it cites in this regard is a short statement in a declaration by a Salesforce executive. (D.I 20 at ¶ 18 ("I have no reason to believe that these individuals would voluntarily travel to Delaware to testify").) Salesforce has made no attempt to actually speak to said witnesses to verify if they would be willing to travel to Delaware for trial. All of these witnesses are high-level employees at companies that are incorporated in Delaware. Papazian Decl. ¶ 4. As discussed above, a company incorporated under the laws of Delaware has recognized Delaware as the appropriate venue for commercial litigation. *Scientific Telecomm*, 2016 WL 1650760, at *1. While the companies here are not parties to the present litigation, their incorporation in Delaware indicates that it is presumptively not inconvenient for them to appear in this District. In fact, most of those companies do have a history of litigation in Delaware. Papazian Decl. ¶ 5. Salesforce has failed to meet its burden to show that its non-party witnesses are actually unavailable for trial in Delaware.

Second, Salesforce has further failed to meet its burden of establishing the importance of the identified non-party witnesses at trial. Salesforce has asserted that each of the individuals can "offer facts regarding the nature of their company's relationship with Salesforce." (D.I. 19 at

9.)  It has not sufficiently asserted the importance of these facts to its defense or why the needed testimony cannot be presented by deposition taken pursuant to Fed. R. Civ. P. 45.

Because Salesforce has failed to meet its burden of showing that its non-party witnesses would be actually unavailable for trial in Delaware, or that the testimony could not effectively be presented via deposition at trial, transfer is not warranted.  Furthermore, granting Salesforce's Transfer Motion could very likely make all of Rosebud's most essential witnesses unavailable.  For these reasons this factor weighs in favor of remaining in Delaware.

### F.  DEFENDANT'S BOOKS AND RECORDS CAN EASILY BE PRODUCED IN DELAWARE

The final private interest that the Court considers in weighing the *Jumara* factors is the location of books and records that may need to be produced at trial to the extent that those files could not be produced in the alternative forum.  *Jumara*, 55 F.3d at 879.  In patent infringement cases, it is true that a large amount of the relevant evidence comes from the infringer, and so the place where the defendant's documents are kept tends to weigh in favor of transfer to that location. *In re Genentech, Inc.,* 566 F.3d 1338, 1345 (Fed. Cir. 2009).  However, technological advancements in the modern era have "significantly reduced the weight accorded this factor." *AIP*, 2012 WL 5199118, at *4.  As a result, this factor should only be given very slight weight. *Audatex N. Am., Inc. v. Mitchell Int'l, Inc.,* No. 12-cv-139-GMS, 2013 WL 3293611, at *6 (D. Del. June 28, 2013).

Salesforce has not alleged that it *cannot* produce its books and records in Delaware.  In fact, the ability to produce such records electronically makes this a simple task.  Salesforce's global scale and multiple offices near to Delaware further diminish any suggested inconvenience to Salesforce as a result of producing its documents.  Accordingly, this factor should be accorded very little weight.

### III. THE PUBLIC INTEREST FACTORS FAVOR DENYING TRANSFER

#### A. JUDGEMENT WILL BE ENFORCEABLE REGARDLESS OF FORUM

Salesforce and Rosebud agree that a judgment from either jurisdiction would be equally enforceable. This factor is neutral.

#### B. PRACTICAL CONCERNS ENCOURAGE REMAINING IN DELAWARE

In addressing practical considerations of trial, Salesforce restates its flawed analysis of the personal interest factors. (D.I 19 at 11.) Salesforce does not have any interest in balancing judicial ease, expedition, or expense. Instead, it once again focuses on its own convenience in litigating in the Northern District of California. Tellingly, Salesforce could have brought its Transfer Motion when it first responded to Rosebud's complaint. Instead, it has waited until forcing briefing on two motions to dismiss. This serial pleadings-stage motion practice indicates that Salesforce's goals are not efficiency and justice, but to avoid proceeding on the merits to the prejudice of a much smaller opponent. This transparent dilatory motive further demonstrates that the interest of justice will best be served here by denying transfer.

#### C. COURT CONGESTION

Salesforce notes the increasing patent caseload in the District of Delaware in the past year. (D.I 19 at 11.) This is a direct result of the Supreme Court's guidance in *TC Heartland*. The Supreme Court identified a company's state of incorporation as the appropriate venue in which to bring a patent infringement suit against it under § 1400(b). Because Delaware is a highly preferred state for incorporation, it is natural that the District Court here will see an increased volume of patent infringement suits. This is a natural consequence of the Supreme Court's decision.

However, there are two fatal flaws with Salesforce's position. First, the only evidence in support of its allegation of comparative congestion cited by Salesforce is the "Kent Decl." (D.I. 19 at 11.) As noted above, the "Kent Declaration" was never filed or served by Salesforce. *See* note 1, *supra*. Accordingly, it has presented no evidence for the Court to consider, only attorney argument.

In addition, Salesforce fails to compare overall congestion between the District of Delaware and the Northern District of California. Salesforce cannot meet its burden by simply comparing the number of patent cases that have been filed in each forum, a number it believes favors it, while ignoring of the overall congestion considering all cases. The latter metric is the proper test, but, as with its flawed patent-only analysis, Salesforce has presented no evidence to support the proper standard. Salesforce has the burden of showing how this factor weighs in its favor, and it has made no showing at all.

The factor must therefore be weighed in favor of Rosebud.

## D.   DELAWARE COURTS HAVE A LOCAL INTEREST IN ENSURING THAT COMPANIES INCORPARATED IN THE STATE ARE SUBJECT TO DELAWARE JURISDICITION

Delaware generally has a substantial interest in handling lawsuits brought against a company incorporated here. *Autodesk Can. v. Assimilate, Inc.*, No. 08-587-SLR-LPS, 2009 WL 3151026, at *9 (D. Del. Sep. 29, 2009). In this case, *both* companies are citizens of Delaware. "Delaware has a strong interest in adjudicating disputes among its corporate citizens." *Intellectual Ventures I*, 842 F. Supp. 2d at 760. This factor weighs in favor of remaining in Delaware.

### E.  THE PUBLIC POLICY OF DELAWARE ENCOURAGES THE USE OF DELAWARE LAW BY DELAWARE CORPORATIONS

"The public policy of Delaware encourages the use by Delaware corporations of Delaware as a forum for resolution of business disputes." *Wacoh Co. v. Kionix Inc.,* 845 F. Supp. 2d 597, 604 (D. Del. Jan. 9, 2012).  Many corporations willingly avail themselves of the jurisprudence of Delaware by incorporating here.  As a result, there exists a presumption that a company incorporated under the laws of Delaware has recognized Delaware as the appropriate venue for commercial litigation.  *Scientific Telecomm*, 2016 WL 1650760, at *1.  It would be unjust to allow companies to benefit from the law of this jurisdiction only when it is convenient and in their favor and then attempt to skirt its power when they may find more favorable conditions elsewhere.  It is clear that this is what Salesforce is attempting do here; it seeks to abuse the system in an attempt to bully a smaller company by running up the cost of litigation.  This factor accordingly favors remaining in Delaware.

### F.  FAMILIARITY OF THE TRIAL JUDGE WITH APPLICABLE LAW

This factor generally only applies to diversity actions brought on state law claims. Since patent claims are federal in nature, both potential districts here are knowledgeable about the applicable law. This factor is neutral.

## CONCLUSION

Because (1) Salesforce's incorporation in Delaware creates a presumption that Delaware is a convenient forum in which to litigate; (2) Rosebud's choice of forum should be accorded heightened weight, and (3) the private and public interest factors taken together weigh heavily in favor of remaining in Delaware, this Court should deny Salesforce's Motion to Transfer to the Northern District of California.

Respectfully submitted,

Date:   April 20, 2018

*/s/ Richard C. Weinblatt*
Cecil E. Key
DIMUROGINSBERG, P.C.
1101 King St., Suite 610
Alexandria, Virginia 22314
Phone: (703) 684-4333
Fax:    (703) 548-3181
Email: ckey@dimuro.com

Richard C. Weinblatt #5080
STAMOULIS & WEINBLATT LLC
Two Fox Point Centre
6 Denny Road, Suite 307
Wilmington, Delaware 19809
Phone: (302) 999-1540
Email: weinblatt@swelaw.com

*Attorneys for Plaintiff*
*ROSEBUD LMS, INC.*

19

## CERTIFICATE OF SERVICE

I hereby certify that on April 20, 2018, I electronically filed the above documents with the Clerk of Court using CM/ECF which will send electronic notification of such filings to all registered counsel.


*/s/ Richard C. Weinblatt*
Richard C. Weinblatt #5080