IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

ROSEBUD LMS, INC., :
:
          Plaintiff, :
:
v. : Civil Action No. 17-1712-CFC
:
SALESFORCE.COM, INC., :
:
          Defendant. :

---

Richard C. Weinblatt, STAMOULIS & WEINBLATT LLC, Wilmington, Delaware; Cecil E. Key, DIMUROGINSBERG, P.C., Alexandria, Virginia

*Counsel for Plaintiff*

Jack B. Blumenfeld, Stephen J. Kraftschik, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware

*Counsel for Defendant*

**MEMORANDUM OPINION**

November 20, 2018
Wilmington, Delaware

---

_[signature]_
CONNOLLY, UNITED STATES DISTRICT JUDGE

Defendant Salesforce.com, Inc. ("Salesforce") has moved pursuant to 28 U.S.C. § 1404(a) to transfer this patent case to the Northern District of California. D.I. 18. For the reasons discussed below, I will deny Salesforce's motion.

Both Salesforce and the Plaintiff Rosebud LMS, Inc. ("Rosebud") are Delaware corporations. Rosebud filed this action on November 28, 2017, alleging that Salesforce's online platform "Quip" infringes two patents (the "Rosebud patents"). D.I. 1 at ¶ 16. After Salesforce moved to dismiss (D.I. 8), Rosebud filed a first amended complaint on February 9, 2018 (D.I. 12). The amended complaint added a joint infringement allegation, accusing Salesforce of "partner[ing] with third parties . . . including . . . Atlassian, Facebook[], Google, Lucid Software, Smartsheet, and Docusign" to infringe one of the Rosebud patents. *Id.* at ¶ 37. Salesforce moved to dismiss Rosebud's amended complaint on February 23, 2018 (D.I. 14), and filed its motion to transfer on April 3, 2018.

Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. §

1404(a). It is undisputed that this action could have been brought in the Northern District of California, where Salesforce has its headquarters and principal place of business. D.I. 25 at 5. Thus, the only issue before me is whether I should exercise my discretion under § 1404(a) to transfer the case to the Northern District of California.

As the movant, Salesforce has the burden "to establish that a balancing of proper interests weigh[s] in favor of the transfer." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970). This burden is heavy. "[U]nless the balance of convenience of the parties is *strongly* in favor of [the] defendant, the plaintiff's choice of forum should prevail." *Id.* (emphasis in original) (internal quotation marks and citation omitted).

The proper interests to be weighed in deciding whether to transfer a case under § 1404(a) are not limited to the three factors recited in the statute (i.e., the convenience of the parties, the convenience of the witnesses, and the interests of justice). *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). Although there is "no definitive formula or list of the factors to consider" in a transfer analysis, the court in *Jumara* identified 12 interests "protected by the language of § 1404(a)." *Id.* Six of those interests are private:

> [1] plaintiff's forum preference as manifested in the original choice; [2] the defendant's preference; [3] whether the claim arose elsewhere; [4] the convenience of the parties as indicated by their relative physical and

> financial condition; [5] the convenience of the
> witnesses—but only to the extent that the witnesses may
> actually be unavailable for trial in one of the fora; and [6]
> the location of books and records (similarly limited to the
> extent that the files could not be produced in the
> alternative forum).

*Id.* (citations omitted). The other six interests are public in nature:

> [7] the enforceability of the judgment; [8] practical
> considerations that could make the trial easy, expeditious,
> or inexpensive; [9] the relative administrative difficulty
> in the two fora resulting from court congestion; [10] the
> local interest in deciding local controversies at home;
> [11] the public policies of the fora; and [12] the
> familiarity of the trial judge with the applicable state law
> in diversity cases.

*Id.* at 879–80 (citations omitted). As the parties have not identified relevant factors beyond these 12 interests, I will balance the *Jumara* factors in deciding whether to exercise the discretion afforded me by § 1404(a).

## I. PLAINTIFF'S FORUM PREFERENCE

This factor clearly weighs against transfer. The parties agree on that much. They disagree, however, about the amount of weight I should give this factor in conducting the balancing of interests called for by *Jumara*. Salesforce argues that Rosebud's forum choice deserves "little weight" (D.I. 19 at 6); Rosebud contends that I should give its forum choice "paramount consideration" (D.I. 25 at 6).

In *Shutte*, the Third Circuit held that "[i]t is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a

3

transfer request" brought pursuant to § 1404(a), and that this choice "should not be lightly disturbed." 431 F.2d at 25 (internal quotation marks and citation omitted). The parties have not cited and I am not aware of any Third Circuit or United States Supreme Court case that overruled *Shutte*. *Jumara* cited *Shutte* favorably and reiterated *Shutte*'s admonition that "the plaintiff's choice of venue should not be lightly disturbed." *Jumara*, 55 F.3d at 879 (internal quotation marks and citation omitted). Thus, I agree with Rosebud that binding Third Circuit law compels me to treat its forum choice as "a paramount consideration" in the § 1404(a) balancing analysis.

Salesforce, however, asks me to ignore *Shutte*'s unambiguous language (and *Jumara*'s endorsement of *Shutte*), and instead give Rosebud's forum choice "little weight" because Rosebud's only connection to Delaware is the fact that Rosebud is a Delaware corporation. D.I. 19 at 6. Salesforce cites in support of its position certain opinions issued by district court judges in the Third Circuit that appear to assign less weight to a plaintiff's forum choice when the forum is not the plaintiff's "home turf" — that is, if the plaintiff has limited or no facilities, operations, or employees in the forum — and/or when the facts giving rising to the lawsuit did not occur in the plaintiff's selected forum. *See id.* at 6; D.I. 26 at 1. I am not, however, persuaded that these opinions are consistent with *Shutte*. I will instead

follow Judge Stapleton's lead in *Burroughs Wellcome Co. v. Giant Food, Inc.*, 392 F. Supp. 761 (D. Del. 1975).

Like Judge Stapleton, I read *Shutte's* "statement of 'black letter law' as an across-the-board rule favoring plaintiff's choice of forum." *Id.* at 763. As Judge Stapleton explained in rejecting the "home-turf" rule argued by the defendant in *Burroughs*:

> The court's decision in *Shutte* to give weight to the plaintiff's choice of forum is not an application of any of the criteria recited in [§ 1404(a)]. Assuming jurisdiction and proper venue, weight is given to plaintiff's choice because it is plaintiff's choice and a strong showing under the statutory criteria in favor of another forum is then required as a prerequisite to transfer. One can perhaps debate whether plaintiff's choice should be given any weight at all in a transfer context, but assuming it is to be given some weight in cases where the plaintiff lives in the forum state, it is difficult to see why it should not also be given weight when the plaintiff lives in [another] state. . . . [The] plaintiff's contact or lack thereof with the forum district will ordinarily be reflected in the 'balance' of conveniences, but that contact, per se, is unrelated to anything in *Shutte*, or Section 1404(a).

*Id.* at 763 n.4.

I, too, find it difficult to understand why the plaintiff's forum choice in and of itself merits less weight when the plaintiff has no ties to the selected forum or when the facts underlying the controversy occurred elsewhere. I do not mean to suggest that these two latter considerations will not impact the overall transfer analysis. On the contrary, because these considerations are subsumed and given

5

weight under *Jumara* factors 3 (whether the claim arose elsewhere), 4 (convenience of the parties), 5 (convenience of the witnesses), 6 (location of books and records), 8 (practical considerations that could make the trial easy, expeditious, or inexpensive), and 10 (the local interest in deciding local controversies at home), a defendant seeking to transfer a case when neither the plaintiff nor the facts giving rise to the case have any connection to the selected forum will generally have less difficulty in meeting its burden to establish that the *Jumara* factors weigh strongly in favor of transfer.

I do not believe that the Federal Circuit's opinion in *In re Link_A_Media Devices Corp.*, 662 F.3d 1221 (Fed. Cir. 2011), also cited by Salesforce, compels a different conclusion. In *Link_A_Media*, the Federal Circuit vacated this court's denial of a § 1404(a) motion to transfer a patent case filed here by a non–United States company. *Id.* at 1222. The Federal Circuit held that this court committed a "fundamental error [in] making [the plaintiff's] choice of forum and the fact of [the defendant's] incorporation in Delaware effectively dispositive of the transfer inquiry." *Id.* at 1223. Although the Federal Circuit did not cite *Shutte* in *Link_A_Media*, it applied Third Circuit law and noted that "[t]o be sure, the Third Circuit places significance on a plaintiff's choice of forum." *Id.*

In dicta in *Link_A_Media*, the court noted that "[w]]hen a plaintiff brings its charges in a venue that is not its home forum, . . . that choice of forum is entitled to

weight under *Jumara* factors 3 (whether the claim arose elsewhere), 4 (convenience of the parties), 5 (convenience of the witnesses), 6 (location of books and records), 8 (practical considerations that could make the trial easy, expeditious, or inexpensive), and 10 (the local interest in deciding local controversies at home), a defendant seeking to transfer a case when neither the plaintiff nor the facts giving rise to the case have any connection to the selected forum will generally have less difficulty in meeting its burden to establish that the *Jumara* factors weigh strongly in favor of transfer.

I do not believe that the Federal Circuit's opinion in *In re Link_A_Media Devices Corp.*, 662 F.3d 1221 (Fed. Cir. 2011), also cited by Salesforce, compels a different conclusion. In *Link_A_Media*, the Federal Circuit vacated this court's denial of a § 1404(a) motion to transfer a patent case filed here by a non–United States company. *Id.* at 1222. The Federal Circuit held that this court committed a "fundamental error [in] making [the plaintiff's] choice of forum and the fact of [the defendant's] incorporation in Delaware effectively dispositive of the transfer inquiry." *Id.* at 1223. Although the Federal Circuit did not cite *Shutte* in *Link_A_Media*, it applied Third Circuit law and noted that "[t]o be sure, the Third Circuit places significance on a plaintiff's choice of forum." *Id.*

In dicta in *Link_A_Media*, the court noted that "[w]hen a plaintiff brings its charges in a venue that is not its home forum, . . . that choice of forum is entitled to

less deference." *Id.* I understand this statement, however, to apply only when the plaintiff, like the plaintiff in *Link_A_Media*, is a non–United States company. I draw this inference because the court cited in support of its statement two Supreme Court decisions, *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422 (2007) and *Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981), neither of which involved transfer motions brought pursuant to § 1404(a). Rather, in both *Sinochem* and *Piper Aircraft*, the Supreme Court reviewed dismissals of actions filed by non–United States plaintiffs based on the common-law *forum non conveniens* doctrine. As the Court explained in *Piper Aircraft*, "1404(a) transfers are different than dismissals on the ground of *forum non conveniens*." 454 U.S. at 253. Unlike § 1404(a), "[t]he common-law doctrine of *forum non conveniens* has continuing application [in federal courts] only in cases where the alternative forum is abroad, and perhaps in rare instances where a state or territorial court serves litigational convenience best." *Sinochem*, 549 U.S. at 430 (second alteration in original) (internal quotation marks and citation omitted). The doctrine "is designed in part to help courts avoid conducting complex exercises in comparative law" and thus enables a district court to dismiss the case where it would be otherwise "required to untangle problems in conflict of laws, and in law foreign to itself." *Piper Aircraft*, 454 U.S. at 251 (internal quotation marks and citation omitted). Because these concerns about foreign law and comparative law issues are not implicated by a §

1404(a) transfer motion in a patent case filed by a domestic plaintiff, I understand *Link_A_Media* to say that a plaintiff's forum choice in a patent case merits "less deference" for § 1404(a) purposes only if the plaintiff does not reside in the United States.

In this case, Rosebud is a domestic company (indeed, it is a Delaware company), and therefore I will follow *Shutte* and give Rosebud's forum choice paramount consideration in balancing the *Jumara* factors.

## II. DEFENDANT'S FORUM PREFERENCE

This factor favors transfer.

## III. WHETHER THE CLAIM AROSE ELSEWHERE

This factor bears only slightly on the transfer analysis. On one hand, research and development efforts associated with the Quip platform occurred in the Northern District of California. The connection between those efforts and the Northern District favors transfer. *See In re Hoffmann–La Roche, Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). On the other hand, patent claims arise wherever the allegedly-infringing products are sold, *Treehouse Avatar LLC v. Valve Corp.*, 170 F. Supp. 3d 706, 710 (D. Del. 2016) (first citing 35 U.S.C. § 271(a); then citing *Red Wing Shoe Co. v. Hockerson–Halberstadt, Inc.*, 148 F.3d 1355, 1360 (Fed. Cir. 1998)), and Salesforce does not dispute Rosebud's assertion that the Quip

product is marketed and sold online, including in Delaware. Overall, this factor weighs in favor of transfer, but only slightly.

### IV. THE CONVENIENCE OF THE PARTIES AS INDICATED BY THEIR RELATIVE PHYSICAL AND FINANCIAL CONDITION

This factor weighs against transfer. Salesforce, as a multinational company incorporated in Delaware, can demonstrate "inconvenience" for § 1404(a) purposes only if it "prove[s] that litigating in Delaware would pose a unique or unusual burden on [its] operations." *Graphics Props. Holdings Inc. v. Asus Comput. Int'l, Inc.*, 964 F. Supp. 2d 320, 325 (D. Del. 2013) (second alteration in original) (internal quotation marks and citation omitted); *see also ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp. 2d 565, 573 (D. Del. 2001) ("[A]bsent some showing of a unique or unexpected burden, a company should not be successful in arguing that litigation in its state of incorporation is inconvenient."). Salesforce has not identified any significant inconvenience — let alone a unique or unusual burden — that it would encounter as a party in this Court. Salesforce is a large company with thousands of employees and 51 offices located in 12 states and 27 countries. D.I. 20 at ¶ 4; D.I. 25-2 at ¶ 2. Its size, financial resources, and status as a Delaware corporation negate its assertion that it would be inconvenienced by having to litigate in Delaware. *See Smart Audio Techs., LLC v. Apple, Inc.*, 910 F. Supp. 2d 718, 731 (D. Del. 2012).

9

I do not doubt that the Northern District of California is a more convenient venue for Salesforce. Its headquarters are only two miles from the Northern District courthouse in San Francisco, and its employees who are most knowledgeable about the Quip product reside in the Northern District. D.I. 20 at ¶¶ 9-10, 15. But Delaware is a more convenient forum for Rosebud. Its single office in New York is significantly closer to Wilmington than it is to San Francisco. D.I. 25 at 10. And Rosebud has more limited financial resources than does Salesforce to bear the costs of cross country travel. Moreover, its 80-year-old CEO (and co-inventor of the Rosebud patents), John J. Mohan, who resides in Fort Lauderdale, Florida, has declared under oath that traveling to San Francisco will be more burdensome and stressful than traveling to Wilmington and will take more time and thus make it more difficult for him to operate the company. D.I. 25-1 at ¶¶ 6–7. Given Mr. Mohan's age and health concerns (*Id.* at ¶ 6) and the fact that Fort Lauderdale is approximately 2,000 miles closer to Wilmington than it is to San Francisco (D.I. 25-2 at ¶ 3), I am persuaded that Delaware is a more convenient venue for him and Rosebud.

Overall, after balancing the convenience of litigating in the Northern District of California for Salesforce with (1) Salesforce's status as a Delaware corporation, (2) the relative size and financial resources of the parties, and (3) the convenience

of litigating in the District of Delaware for Rosebud and its CEO, I find that this factor weighs against transfer.

## V. THE CONVENIENCE OF THE WITNESSES

This factor carries weight "only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879; *see also Smart Audio*, 910 F. Supp. 2d at 732 (noting that this factor applies only insofar as "a witness actually will refuse to testify absent a subpoena"). "[W]itnesses who are employed by a party carry no weight," because "each party is able, indeed, obligated to procure the attendance of its own employees for trial." *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 203 (D. Del. 1998). In considering this factor, "the Court should be particularly concerned not to countenance undue inconvenience to third-party witnesses . . . who have no direct connection to the litigation." *Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 757 (D. Del. 2012), *mandamus denied sub nom. In re Altera Corp.*, 494 F. App'x. 52 (Fed. Cir. 2012).

By way of a sworn declaration from Alice Hehman, the COO of Salesforce's wholly-owned subsidiary Quip, Inc., Salesforce identifies four nonparty residents of the Northern District of California who "are most knowledgeable about" Salesforce's relationship with four of the six companies that are alleged by Rosebud to have partnered with Salesforce to infringe one of the Rosebud patents.

11

D.I. 20 at ¶¶ 1, 18. In its opening brief filed in support of its motion, Salesforce says that it "will want to present testimony" from these four witnesses to challenge Rosebud's joint infringement allegation. D.I. 19 at 4. Salesforce never expressly states in either its opening brief or its reply brief that it intends to present the live testimony of these witnesses at trial; but it intimates in its briefing that it wants to call the witnesses at trial or at least to have the option to do so. *See id.* at 9–10; D.I. 26 at 7–8. Salesforce argues that these witnesses could not be compelled to testify at trial in Delaware, *see* Fed. R. Civ. P. 45(c),[1] and Ms. Hehman avers in her declaration that she has "no reason to believe that these [witnesses] would voluntarily travel to Delaware to testify[.]" D.I. 20 at ¶ 18. Neither Ms. Hehman nor Salesforce, however, suggest that anyone from or on behalf of Salesforce has ever discussed with the witnesses whether they would be willing to testify at trial — in California or in Delaware. Salesforce also says nothing about the location or the availability for trial (in California or Delaware) of nonparty witnesses from the two other companies that are alleged to have partnered with Salesforce to infringe one of the Rosebud patents.

---

[1]Under Federal Rule of Civil Procedure 45(c), a subpoena may command appearance at trial only within 100 miles of where that person resides, is employed, or regularly transacts business in person or within the state where the person resides, is employed, or regularly transacts business in person, if the person is a party or a party's officer or is commanded to attend a trial and would not incur substantial expense.

For its part, Rosebud argues that two of its nonparty witnesses — each a co-inventor of the Rosebud patents — would have more difficulty attending trial in San Francisco than they would in Wilmington because they reside in locations closer to Delaware. D.I. 25 at 12–13. Neither of the inventors can be compelled to appear in either the Northern District or in Delaware, as one lives in Wisconsin and the other resides in Canada. Mr. Mohan avers in his declaration that one of the inventors "has indicated that he has no objection to voluntarily appearing in Delaware if needed." D.I. 25-1 at ¶ 8. But neither Mr. Mohan nor Rosebud say that the remaining inventor would appear voluntarily in Delaware; and, like Ms. Hehman, Mr. Mohan offers a less-than-definitive statement about the inventors' availability in Rosebud's disfavored forum. In Mr. Mohan's sworn words: "there is no indication that either of the . . . co-inventors will be as amenable to traveling to San Francisco" as they would to Wilmington. *Id.* at ¶ 9.

Because neither party has demonstrated that a necessary witness will refuse to appear or otherwise be unavailable for trial in either venue, I arguably could find that this factor is neutral in the *Jumara* analysis. Both declarations relied upon by the parties essentially speculate that nonparty fact witnesses may not attend trial in one of the competing fora. I nevertheless find that this factor weighs slightly in favor of transfer. Salesforce, unlike Rosebud, gives a specific reason why it wishes to present testimony from specific nonparty witnesses (i.e., to rebut

13

Rosebud's joint infringement allegation). D.I. 19 at 8–9. It further explains why there is reason to believe that those witnesses would not voluntarily appear at trial (i.e., because they would potentially subject their employers to future litigation with Rosebud). D.I. 26 at 6–7. I am also persuaded by the fact that the nonparty witnesses identified by Salesforce reside within the Northern District of California and none of the nonparty witnesses identified by Rosebud live in or very close to Delaware. D.I. 19 at 9; D.I. 25 at 12.

## VI. THE LOCATION OF BOOKS AND RECORDS

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.* 566 F.3d 1338, 1345 (Fed. Cir. 2009). *Jumara*, however, instructs me to give weight to the location of books and records only "to the extent that the files [and other documentary evidence] could not be produced in the alternative forum." 55 F.3d at 879.

In this case, Salesforce argues that it keeps its documents and electronic records in San Francisco. D.I. 19 at 10. But Salesforce has not identified any evidence that could not be produced in Delaware; nor has it shown that the documentary evidence relevant to this action is found exclusively or even primarily in the Northern District of California. Given the advances in technology that have

14

reduced the burdens associated with producing records in a distant district and the Third Circuit's instruction in *Jumara* to focus on whether the records in question cannot be produced in the competing fora, *see Intellectual Ventures,* 842 F. Supp. 2d at 758–59, I find that this factor weighs in favor of transfer but I will give the factor only minimal weight.

### VII. ENFORCEABILITY OF THE JUDGMENT

The parties agree that this factor is neutral, as judgments from this District and the Northern District of California would be equally enforceable.

### VIII. PRACTICAL CONSIDERATIONS

*Jumara* instructs me to give weight to "practical considerations that could make the trial easy, expeditious, or inexpensive." 55 F.3d at 879. Given the fact that many of the witnesses and most of the relevant records are located in the Northern District of California, I agree with Salesforce that the overall cost of trial would likely be less if the matter were transferred. Although I did not consider issues of economic cost and logistical convenience with respect to potentially relevant Salesforce employees when I assessed the "witness convenience" factor, it is appropriate to consider these issues in assessing "practical considerations." *See Joao Control & Monitoring Sys., LLC v. Ford Motor Co.,* 2013 WL 4496644, at *7 (D. Del. Aug. 21, 2013); *Mitel Networks Corp. v. Facebook, Inc.,* 943 F. Supp. 2d 463, 475–76 (D. Del. 2013). That said, given the relative size and financial

resources of Salesforce as compared to Rosebud, and the fact that a trial in California would likely result in higher travel costs for Rosebud, this factor weighs only slightly in favor of transfer.

### IX. RELATIVE ADMINISTRATIVE DIFFICULTY DUE TO COURT CONGESTION

This factor is neutral. Both fora are heavily congested.

### X. LOCAL INTEREST IN DECIDING LOCAL CONTROVERSIES AT HOME

The local controversy factor is neutral. First, "[p]atent issues do not give rise to a local controversy or implicate local interests." *TriStata Tech., Inc. v. Emulgen Labs., Inc.*, 537 F. Supp. 2d 635, 643 (D. Del. 2008). Second, Salesforce, with thousands of employees in dozens of countries, is not a "local" company; and its dispute with Rosebud, which does not reside in California, is not a "local controversy" in the Northern District. One could fairly conclude that this factor weighs against transfer because this action involves a dispute between two Delaware corporate citizens; but I will treat this factor as neutral because the parties' Delaware corporate status also bears on the next factor (public policies of the fora).

### XI. PUBLIC POLICIES OF THE FORA

Delaware's public policy encourages Delaware corporations to resolve their disputes in Delaware courts. *Round Rock Research, LLC v. Dell, Inc.*, 904 F.

16

Supp. 2d 374, 378 (D. Del. 2012). Salesforce has not cited any countervailing California public policy. Thus, this factor weighs against transfer, although I will give it minimal weight. *See Intellectual Ventures*, 842 F. Supp. 2d at 760; *In re Altera Corp.*, 494 F. App'x. at 53 ("the relevant inquiry [in the transfer analysis] is broad enough to include the Delaware court's interest in resolving disputes involving its corporate citizens").

### XII. FAMILARITY OF THE TRIAL JUDGES WITH THE APPLICABLE STATE LAW IN DIVERSITY CASES

Rosebud's claims arise under the federal patent laws. Therefore, the familiarity of the respective districts with state law is not applicable and this factor is neutral.

\* \* \* \*

In sum, of the 12 *Jumara* factors, four are neutral, three weigh to varying degrees against transfer, and five weigh to varying degrees in favor of transfer. On the whole, recognizing the appropriate weight to be given to each factor and giving paramount consideration to Rosebud's choice of this forum, I find that Salesforce has failed to demonstrate that the *Jumara* factors weigh strongly in favor of transfer, and therefore, I will deny Salesforce's motion to transfer.[2]

---

[2] I note that I would have reached the same conclusion had I given "significant" but less than "a paramount consideration" to Rosebud's forum choice in my balancing of the *Jumara* factors. *See Link_A_Media*, 662 F.3d at 1223 (noting that

17

The Court will enter an order consistent with this Memorandum Opinion.

---

"[t]o be sure, the Third Circuit places significance on a plaintiff's choice of forum.").

18